UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61313-CIV-HURLEY/HOPKINS

JOE BROWN,

       Plaintiff,

vs.

JOSEPH HANNOLD,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S RENEWED MOTION
## FOR JUDGMENT AS A MATTER OF LAW

**THIS CAUSE** is before the court upon defendant Joseph Hannold's renewed motion for

judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) [DE # 187].  For the reasons expressed

below, the court will grant the motion and enter judgment in defendant's favor.

### BACKGROUND

This is an action pursuant to the Civil Rights Act, 42 U.S.C. 1983 against Police Officer

Joseph Hannold ("Officer Hannold") for an alleged illegal search and seizure.  The incident that is

the focus of this case occurred on August 21, 2003, when plaintiff Joe Brown ("Mr.  Brown") was

attacked and severely beaten by a large group of unknown assailants.  A radio alert was broadcast

regarding the attack, and Officer Hannold, who was patrolling the area, responded.  When Officer

Hannold arrived at the scene of the attack, he found Mr. Brown lying bloody and unconscious on the

road, his head having been lacerated from the attack.  Mr. Brown needed emergency medical aid, and

Officer Hannold immediately called for an ambulance.

Officer Hannold then attempted to ascertain Mr. Brown's identity.  He asked Mr. Brown for

his name twice, but Mr. Brown did not provide it.  Rather, Mr. Brown told Officer Hannold that his identification was in his pocket, and gave Officer Hannold permission to search for it.  Officer Hannold reached into Mr. Brown's left pocket, and removed its contents, including a Broward sheriff's office release form, a picture from the department of corrections, and a small jewelry box. Officer Hannold opened the jewelry box without obtaining Mr. Brown's permission.  Thereafter, Mr. Brown was transported to a local medical center, where he received treatment for his injuries.

Both Officer Hannold and Mr. Brown testified during trial that, when Officer Hannold opened the box, Mr. Brown was the victim of an assault, and not a suspect in a crime.  Officer Hannold testified that he opened the jewelry box in order to find information, such as an identification, medical identification tag (in the form of a bracelet or charm), or document, that would help him and other responders provide emergency medical care to Mr. Brown. Officer Hannold testified that the area in which he found Mr. Brown has a large homeless population, who tend to carry identification and other important medical documents on their person in various forms, locations, and containers.

The contents of the jewelry box did not reveal Mr. Brown's identity or relevant medical information.  Instead, inside the box Officer Hannold found jewelry, which he recognized as the fruits of an earlier burglary he had fortuitously investigated.  Mr. Brown was later arrested and charged with burglary.  The state trial judge suppressed the jewelry box as the product of an illegal search.  Nevertheless, Mr. Brown was convicted.  He was sentenced in state court as a career offender and received a lengthy sentence.

Mr. Brown then filed suit against Officer Hannold under § 1983 for illegal search and seizure. The parties proceeded to trial on December 14, 2009.  At the conclusion of Mr. Brown's

2

case in chief and then at the conclusion of all the evidence, Officer Hannold moved for judgment as a matter of law, arguing that he was entitled to qualified immunity.[1]  The court heard argument on the motion and took it under advisement.  After a two-day trial, the jury found that Officer Hannold violated Mr. Brown's constitutional right not to be subjected to an unreasonable search and awarded Mr. Brown $1.00 in nominal damages.  Officer Hannold then filed the instant motion, renewing his motion for judgment as a matter of law.

## DISCUSSION

### A.      *Standard on Rule 50(b) Motion*

"Under Rule 50(b), a party may renew its motion for judgment as a matter of law after the jury has returned its verdict, if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Optimum Techs, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1251 (11th Cir. 2007).  "Regardless of timing, however, in deciding on a Rule 50 motion a district court's proper analysis is squarely and narrowly focused on the sufficiency of evidence." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007).   The court must consider the entire record and resolve all inferences in favor of the nonmoving party.  *See Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 149.  "The question before the district court regarding a motion for judgment as a matter of law remains whether the evidence is legally sufficient to find for the party on that issue, regardless of whether the district court's analysis is undertaken before or after submitting the case to the jury." *Chaney,* 483 F.3d at 1227.

---

[1]  Officer Hannold did not file a motion to dismiss or a motion for summary judgment on ground of qualified immunity.

### B.      Defendant's Rule 50(b) motion

#### 1.      Qualified Immunity

Officer Hannold argues that he is entitled to qualified immunity on Mr. Brown's § 1983 claim. The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Al-Amin v. Smith*, 511 F.3d 1317, 1324 (11th Cir. 2008) (internal quotations and citations omitted). The government official claiming the protection of qualified immunity must first establish that he was acting within his discretionary authority.  *Id.*  Here, Officer Hannold was acting within the scope of his discretionary authority when he responded to a radio alert and administered medical aid to Mr. Brown.  *See Andrews v. Monroe County Bd. of Ed.,* 299 Fed. Appx. 937, 940 (11th Cir.2008) (actions taken "pursuant to the performance of [an officer's] duties and within the scope of his authority" are within the scope of an officer's discretionary authority).

The burden then shifts to the plaintiff, who must satisfy a two-part test in order to avoid the application of qualified immunity. The plaintiff must first show that the allegations, if true, establish a constitutional violation. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). If no constitutional violation is demonstrated, then "the officers prevail, and there is no necessity for further inquiries concerning qualified immunity." *Dahl v.* Holley, 312 F.3d 1228, 1233 (11th Cir. 2002) (citing Saucier *v. Katz,* 533 U.S. 194, 201 (2001)). If the plaintiff establishes a constitutional violation, the plaintiff must then show that the constitutional right was clearly established at the time of the alleged violation. *Al-Amin*, 511 F.3d at 1324-25.

2.      *Alleged Illegal Search and Seizure*

Mr. Brown alleges that Officer Hannold violated his Fourth Amendment right to be free from unreasonable searches and seizures.   Mr. Brown acknowledges that he gave Officer Hannold permission to reach into his pocket and remove his identification, but contends that Officer Hannold exceeded the scope of the permission granted by removing the jewelry box and opening it without probable cause to believe that Mr. Brown had committed a crime.   Officer Hannold maintains that the search did not violate Mr. Brown's Fourth Amendment right, given Mr. Brown's dire need of medical aid.

The Fourth Amendment "'right of the people to be secure in their persons . . . against unreasonable searches and seizures' generally requires a law enforcement Officer to have probable cause for conducting a search."  *See Safford Unified Sch. Dist. v. Redding*, 129 S.Ct 2633, 2639 (2009) (citing U.S. Const. amend. IV).   The probable cause requirement, however, is subject to certain exceptions.  One such exception applies in emergency medical situations where an individual is need of immediate medical attention to protect or preserve his preserve life.   *See Mincey v. Arizona*, 437 U.S. 385, 392 (1978) ("Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."); *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002) ("[E]mergency situations involving endangerment to life fall squarely within the exigent circumstances exception to the Fourth Amendment.").

In these emergency situations, police officers are motivated not by an expectation of discovering evidence of a crime, but by an obligation to render medical aid.  *See Holloway*, 290 F.3d at 1337.  Given this obligation, "in an emergency, the probable cause element may be satisfied where

5

officers reasonably believe a person is in danger." *Id.* Therefore, police officers are permitted to perform limited, warrantless searches to assist individuals in need of aid to protect or preserve life without violating the Fourth Amendment's reasonableness requirement. *See* William E. Ringel, Searches and Seizures, Arrests and Confessions § 10:5 (2009) ("Courts have consistently allowed warrantless searches of persons when those searches were aimed not at criminal investigation, but rather, were responses to emergency situations in which an unconscious person required the aid of the police.").

A warantless search of an individual needing emergency medical care is not only reasonable, but also necessary:

> There is a positive need to see if the person is carrying some indication of a medical history, the rapid discovery of which may save his life; there is also a need to identify persons so found in order to notify relatives or friends. That the cause of appellant's being unconscious was not known in no way impaired but rather enhanced the need and inherent power to search appellant.

*See Vauss v. United States*, 370 F.2d 250, 252 (D.C. Cir. 1966). There is also a need to determine whether the person is carrying medication that must be taken. Simply put, the protections of the Fourth Amendment must sometimes "give way to the sanctity of human life." *Holloway*, 290 F.3d at 1337.

This is such a case. The trial testimony demonstrates that, when Officer Hannold responded to the radio alert and found Mr. Brown, Mr. Brown was badly injured and in need of immediate medical attention. First, when Officer Hannold found Mr. Brown, he knew Mr. Brown had been the subject of an earlier attack. Officer Hannold testified that "it came out as an alert tone over my radio that a gentleman was getting beat up by several other gentlemen, and I responded." Mr. Brown testified that he had been "phsically assaulted by 30, 40 people."

6

Second, when Officer Hannold arrived at the scene of the attack, he found Mr. Brown lying unconscious on the side of the street with serious injuries.  Officer Hannold testified that "when I arrived . . . I saw an . . . unidentified black male lying on the ground."  Mr. Brown stated that "when Officer Joseph Hannold came in contact with me . . . I was unconscious.. . . I wasn't all the way knocked out unconscious, but I was semi-conscious."  He also stated his "head was bursted open, [and he] was bleeding out of the head, bleeding out of the mouth."  According to Mr. Brown, "I had . . . been physically assaulted and beat up, my head was bust open, I had to go to the Broward General Medical CenterHospital for head trauma, head treatment."  Finally, Officer Hannold testified that he immediately called for an ambulance to treat Mr. Brown's injuries, and then attempted to identify Mr. Brown, who, upon regaining consciousness, was so incoherent that he could not remember his own name.

In light of the medical emergency Officer Hannold faced, the search he performed was reasonable and critically necessary.  Mr. Brown was bloody, semi-conscious, and unresponsive. Upon finding Mr. Brown in this condition, a reasonable police officer would have believed that Mr. Brown was in danger and would have tried to render life-saving medical aid.  To that end, a reasonable officer would have attempted to identify Mr. Brown, ascertain his blood type, or determine whether he suffered from any serious illnesses.

This is just what Officer Hannold attempted to do, but because Mr. Brown was semi-conscious and inchoerent, he unable to respond to Officer Hannold's simple question about his identity.  Mr. Brown gave Officer Hannold permission to search his pocket  for his identification, and in performing the search, Officer Hannold found a jewelry box, the contents of which were unknown to Officer Hannold.  Officer Hannold knew that the area contained a large homeless

population, who tend to carry important documents in different containers.  The box thus could have contained a wide range of relevant and important items, such as Mr. Brown's identification, medical documents, contact information of family or friends, a medical bracelet or charm, or medication.  Given the exigency of the situation, Officer Hannold did not violate Mr. Brown's Forth Amendment right by removing the box from his pocket and opening it.

Since the search performed by Officer Hannold was lawful given Mr. Brown's medical emergency, Mr. Brown has failed to establish a violation of his Fourth Amendment right.  This failure alone is fatal to Mr. Brown's § 1983 claim for illegal search and seizure, and the court need not proceed to the second prong of the qualified immunity analysis.[2]  Therefore, Officer Hannold is entitled to the protection of qualified immunity as to Mr. Brown's § 1983 claim for illegal search and seizure.

CONCLUSION

For the reasons stated above, the court will grant Officer Hannold's renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and enter final judgment in his favor.

---

[2] If the court proceeded to the second prong, the court would likely find that Officer Hannold faced an arguable emergency situation – that is, a reasonable officer in the same circumstance and possessing the same knowledge as Officer Hannold could have believed that Mr. Brown was in such danger that a warrantless search was permissible.  Plaintiff has not shown a case with materially indistinguishable facts decided by the United States Supreme Court, Eleventh Circuit, or Supreme Court of Florida holding that a warrantless search to find relevant medical information in the face a medical emergency is unlawful, nor has the court's research revealed one.  *See Long v. Slaton*, 508 F.3d 576, 584 (11th Cir.2007).  Nor is the court persuaded that a broad principle in the case law clearly established that Officer Hannold's conduct was unconstitutional.  *See Williams v. Consolidated City of Jacksonville,* 381 F.3d 1298, 1303 (11th Cir.2004).  Rather, the case law suggests that such a search is permissible.  Therefore, Officer Hannold is likely entitled to qualified immunity under the second step of the qualified immunity analysis.

Order Granting Defendant's Renewed Motion for Judgment as a Matter of Law
Brown v. Hannold
Case No. 06-61313-CIV-HURLEY/HOPKINS

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant Joseph Hannold's renewed motion for judgment as a matter of law [DE # 187] is **GRANTED**.

2. The verdict rendered by the jury in this case is **VACATED** and **SET ASIDE**.

3. Pursuant to Fed. R. Civ. P. 58(a), the court will enter final judgment by separate order.

4. The Clerk of the Court is directed to enter this case as **CLOSED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 21st day of January, 2010.

Daniel T. K. Hurley
United States District Judge

*Copies furnished to counsel of record*

For updated court information, visit unofficial Web site
at http://www.judgehurley.com